**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| EVONNE CLIFFORD, | CASE NO. 5:22-CV-01562-AMK |
| Plaintiff, | |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| DEPARTMENT OF YOUTH SERVICES INDIAN RIVER JUVENILE CORRECTION FACILITY, LOCAL 11 OHIO CIVIL SERVICE EMPLOYEES ASSOCIATION AFSME, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Before the Court are Motions to Dismiss filed by Defendants Local 11 Ohio Civil Service Employees Association AFSME ("OCSEA") (ECF Doc. 17) and Department of Youth Services Indian River Juvenile Correction Facility ("DYS") (ECF Doc. 19). Plaintiff Evonne Clifford ("Ms. Clifford") has filed briefs in opposition (ECF Docs. 24, 25), and the defendants have filed reply briefs (ECF Doc. 26, 27). Thus, the motions are ripe for review.

The parties have consented to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF Docs. 21, 22.) For the reasons that follow, the Court **GRANTS** Defendant OCSEA's Motion to Dismiss in its entirety and **GRANTS IN PART** and **DENIES IN PART** Defendant DYS's Motion to Dismiss.

## I.        Background

### A.        Procedural History

Ms. Clifford filed her initial *pro se* Complaint on September 2, 2022. (ECF Doc. 1.) Following the filing of Motions to Dismiss by both defendants (ECF Docs. 11, 12), she filed

1

briefs in opposition seeking leave to file an Amended Complaint (ECF Docs. 13, 14).  The Court denied the initial Motions to Dismiss as moot and deemed the Amended Complaint filed as of January 26, 2023.  (ECF Doc. 15.)  Ms. Clifford then filed a Motion for Leave to Amend the Complaint Instanter on February 6, 2023 (ECF Doc. 16), which the Court granted (Marginal Entry Order of Feb. 9, 2023), making that Amended Complaint the operative Complaint in this case (ECF Doc. 16-2 ("Am. Compl.")).  The parties thereafter consented to the jurisdiction of the undersigned magistrate judge.  (ECF Docs. 21, 22.)  OCSEA and DYS have filed Motions to Dismiss the Amended Complaint (ECF Doc. 17, 19).[1]  Ms. Clifford filed briefs in opposition (ECF Docs. 24, 25), and the defendants have filed reply briefs (ECF Docs. 26, 27).

At a Case Management Conference on April 4, 2023, Ms. Clifford admitted to receiving informal support from a licensed attorney, despite holding herself out as a *pro se* plaintiff.  (ECF Doc. 32.)  The Court directed Ms. Clifford to provide further information regarding the scope of that attorney's representation and involvement in the case.  (*Id.*)  Ms. Clifford responded that her attorney had drafted all of the briefs she had filed in the case, although Ms. Clifford herself had reviewed, corrected, signed, and filed the briefs as a *pro se* plaintiff.  (ECF Doc. 35.)

At a telephonic status conference on July 6, 2023, and in a minute order issued thereafter, the Court advised Ms. Clifford "that she must be the author of all filings in the case that bear her signature, and that documents drafted by an attorney may only be filed if the attorney has filed an appearance in the case and signed the document as required under Federal Rule of Civil Procedure 11."  (EFC Doc. 39, p. 1.)  Rather than seeking relief for a Rule 11 violation, Defendants advised the Court that they did not object to its consideration of prior filings drafted by Ms. Clifford's attorney but signed and filed *pro se* by Ms. Clifford "so long as those filings

---

[1] Although OCSEA's motion was filed shortly before the Court granted Ms. Clifford's Motion for Leave to Amend, the Court has construed the motion as applicable to the operative Amended Complaint.  (ECF Doc. 27, p. 1.)

are not given the benefit of the less stringent pleading standards generally applicable to *pro se* cases." (*Id.* at p. 2.)  Ms. Clifford did not object to this remedy and the Court finds the remedy appropriate.  Given Ms. Clifford's admission that the Amended Complaint and her briefs in opposition to the present Motions were drafted by her attorney, neither that pleading nor her briefing on the Motions will be given the more deferential treatment accorded to *pro se* filings.

**B.**    **Allegations and Causes of Action**

The facts alleged in the Amended Complaint will be accepted as true for purposes of deciding the present motions.  Ms. Clifford is an individual citizen of the State of Ohio who resides in Stark County, Ohio.  (ECF Doc. 16-2, Am. Compl., ¶ 1.)  She worked as a Juvenile Corrections Officer for Defendant DYS, an agency of the State of Ohio located in Stark County, Ohio, beginning in 1995.  (*Id.* at ¶¶ 1-2, 8.)  Defendant OCSEA is a public union located in Franklin County, Ohio.  (*Id.* at ¶ 3.)  Ms. Clifford became a member of OCSEA in or around 1995 and was a member at all pertinent times.  (*Id.*)

Ms. Clifford worked at a control center as a Juvenile Corrections Officer.  (ECF Doc. 16-2, Am. Compl., ¶ 8.)  Because of her seniority, she could elect whether to work at the desk or the window of the control center.  (*Id.*)  On or about April 12, 2017, she made a written complaint of racial and sex discrimination, alleging that two of her work colleagues were intentionally targeting African-American female employees for discrimination and harassment.  (*Id.* at ¶ 9.)

Ms. Clifford elected to work the desk position five days per week in August or September of 2020, but this election was revoked by a DYS supervisor.  (ECF Doc. 16-2, Am. Compl., ¶ 10.)  In February 2021, she filed a grievance based on this revocation, arguing similarly situated white male employees were permitted to elect where to work at the control center.  (*Id.* at ¶ 11.) While this grievance was pending, Ms. Clifford filed four additional grievances alleging further

3

misconduct.  (*Id.* at ¶ 11.)  On February 18, 2021, Ms. Clifford filed a complaint of race, age, and sex discrimination based on the denial of her right to elect which post/assignment she would work in the control room, consistent with the management-union agreement and the pick-a-post agreement.  (*Id.*, at ¶ 12.)  DYS acknowledged receipt of the complaint on that same date.  (*Id.*)

Ms. Clifford alleges that she filed charges of retaliation with the Equal Employment Opportunity Commission ("EEOC") against both Defendants on June 8, 2021.[2]  (ECF Doc. 16-2, Am. Compl., ¶ 13.)  However, she has filed a sworn affidavit attesting that she believes she filed her original EEOC charge of discrimination in March 2021.  (ECF Doc. 24-1 ("Clifford Aff."), ¶ 1.)  Ms. Clifford was unable to locate a copy of the original EEOC charge (*id.*, at ¶ 2), but Defendant DYS has supplied a copy of an EEOC charge against DYS that was signed by Ms. Clifford and dated February 23, 2021.  (ECF Doc. 26-1 ("2021 EEOC Charge").)  The 2021 EEOC Charge alleged discrimination by DYS against Ms. Clifford based on race/color, sex, and age, and retaliation.  (*Id.* at p. 1.)  Ms. Clifford alleged that she was subjected to harassment, loss of seniority, and a hostile work environment, and challenged instances of alleged discrimination and retaliation occurring in September 2020, January 2021, and February 2021.  (*Id.*, at pp. 1-2.)

On July 24, 2021, Ms. Clifford allegedly served a written complaint upon DYS alleging race and sex discrimination.  (ECF Doc. 16-2, Am. Compl., ¶ 13.)  On September 27, 2021, Ms. Clifford filed an unfair labor practice charge, alleging discrimination and retaliation.  (*Id.* at ¶ 14.)  Ms. Clifford also alleged age discrimination and a violation of the management-union agreement and the pick-a-post agreement's rules of seniority regarding the change in post and

---

[2] The EEOC charges against OCSEA and DYS that Ms. Clifford attached to the Amended Complaint challenge actions which took place long after June 2021, on October 21, 2021 for the DYS charge and as late as April 15, 2022 for the OCSEA charge.  (*See* ECF Doc. 16-2, Am. Compl., pp. 9-11 (Ex. A).)  Accordingly, they are addressed later in this narrative, consistent with the time period in which the documents themselves reflect that they were created.

assignment selection processes.  (*Id.*)  She further alleged that there was an admission of violation by the onsite manager.  (*Id.*)  Ms. Clifford was terminated on October 21, 2021.  (*Id.*)

Ms. Clifford filed a motion for reconsideration against OCSEA on or around January 2022, alleging that she was receiving poor union representation because OCSEA was allowing DYS to discriminate and harass her.  (*Id.* at ¶ 15.)  She stated she was the only staff officer treated differently, and that OCSEA's failure was based on her race and sex.  (*Id.*)  Ms. Clifford also filed a motion for reconsideration against DYS on or around January 2022, alleging that she was the only officer who had a post assignment created and the only one who was given direct orders to go to an assignment.  (*Id.* at ¶ 16.)

Ms. Clifford later filed charges of discrimination with the EEOC against Defendants OCSEA and DYS.  (ECF Doc. 16-2, Am. Compl., ¶¶ 6, 13, pp. 9-11 (Ex. A).)  On June 9, 2022, the EEOC issued a separate Notice of Right to Sue letter to Ms. Clifford for the charges she filed against each defendant.  (ECF Doc. 16-2, Am. Compl., p. 3, ¶ 7, pp. 12-14 (Ex. B).)

The DYS charge that was attached as an exhibit to the Amended Complaint is undated and unsigned.  (*Id.* at p. 11.)  A signed and dated copy of the same charge was filed by DYS, and reflects that the charge was signed by Ms. Clifford on May 4, 2022 (hereinafter "2022 DYS Charge").  (ECF Doc. 19-1, p. 1.)  DYS asks the Court to take judicial notice of the signed EEOC charge (ECF Doc. 19, p. 6, n. 1), and Ms. Clifford does not object to the validity of that document (ECF Doc. 24).  In the 2022 DYS Charge, Ms. Clifford checked a box indicating that the alleged discrimination was based on "retaliation," and took place on October 21, 2021. (ECF Doc 16-2, p. 11; EFC Doc. 19-1, p. 1.)  In support she provided the following narrative:

> I began working for the above named Respondent in or around 1995.  My most recent job title was Juvenile Corrections Officer.
>
> I previously filed a Charge of Discrimination against Respondent (Charge No. 22A-2021-01110).  I also filed three grievances and an unfair labor practice complaint

against Respondent in 2021.  On or [sic] October 21, 2021, I was discharged for insubordination, violation of work rules, and failure to follow work assignments/policies and procedures.

I believe I was discriminated against in retaliation for engaging in protected activity, in violation of the Age Discrimination in Employment Act of 1967, as amended.

(*Id.*)

The OCSEA charge attached as an exhibit to the Amended Complaint is signed by Ms. Clifford and dated June 8, 2022 (hereinafter "2022 OCSEA Charge").  (ECF Doc. 16-2, p. 10.) In the 2022 OCSEA Charge, Ms. Clifford checked a box indicating she was challenging discrimination based on "retaliation" that took place between February 1, 2021, and April 15, 2022.  (*Id.*)  In support, she provided the following additional narrative:

I became a member of the Respondent in or around 1995.  I have filed numerous grievances with the Respondent.  The Respondent has failed to move my grievances over to arbitration.

I believe I was retaliated against for engaging in protected activity, in violation of the Age Discrimination in Employment Act of 1967, as amended.

(*Id.*)

Ms. Clifford asserts four causes of action in the Amended Complaint.  In Counts One and Two, she alleges that Defendants engaged in race and sex discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*  (ECF Doc. 16-2, Am. Compl. ¶¶ 17-30.)  DYS allegedly subjected her to disparate treatment, e.g., by ignoring her senior status, disciplining her, and terminating her.  (*Id.* at ¶¶ 18, 25.)  OCSEA allegedly engaged in disparate treatment by failing to pursue corrective action, such as Ms. Clifford's grievances.  (*Id.*)  In Count Three, she alleges that Defendant OCSEA engaged in age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (*Id.* at ¶¶ 31-36.)  In Count Four, she alleges that Defendants retaliated against her on the basis of race, sex, and age under Title VII,

42 U.S.C. § 2000e *et seq.* and the ADEA, 29 U.S.C. § 621 *et seq.*  (*Id.* at ¶¶ 39-48.)  She alleges

that Defendant DYS took retaliatory action against her by "permitting on-going discrimination

and harassment by co-workers, disciplining her, and terminating her."  (*Id.* at ¶ 41.)  She alleges

that Defendant OCSEA took retaliatory action against her by "refusing to timely process her

grievances and pursue arbitrations for filing complaints, grievances, and motions for

reconsideration."  (*Id.* at ¶ 42.)

## II.    Law & Analysis

Defendants DYS and OCSEA move separately to dismiss the Amended Complaint.  As

to the Title VII race and sex discrimination claims asserted in Counts One and Two, Defendants

argue those claims must be dismissed for failure to exhaust administrative remedies and/or as

time barred.  (ECF Doc. 17, pp. 6, 8-10, 12-13; ECF Doc. 19, pp. 1, 3-6.)  DYS further asserts

that the Title VII retaliation claim asserted in Count Four must be dismissed for failure to

exhaust administrative remedies, and that any ADEA retaliation claim asserted against DYS in

Count Four must be dismissed on the basis of Eleventh Amendment sovereign immunity.  (ECF

Doc. 19, pp. 1, 3-7.)  OCSEA asserts that the ADEA age discrimination claim in Count Three

and the retaliation claims asserted in Count Four must also be dismissed because Ms. Clifford

has failed to state a claim upon which relief may be granted.  (ECF Doc. 17, pp. 10-12.)

For the reasons set forth in detail below, the Court finds:

(1)    the Title VII race and sex discrimination claims against both Defendants must be
        dismissed for failure to exhaust administrative remedies, and therefore both motions
        to dismiss Counts One and Two of the Amended Complaint must be granted;

(2)    Ms. Clifford has exhausted her administrative remedies with respect to her Title VII
        retaliation claim against DYS, and therefore DYS's motion to dismiss Count Four
        of the Amended Complaint must be denied;

(3)    the ADEA and Title VII claims asserted against OSCEA must be dismissed for
        failure to state a claim upon which relief may be granted, and therefore OCSEA's

motion to dismiss in Counts Three and Four of the Amended Complaint must be granted; and

(4)   any ADEA retaliation claim against DYS must be dismissed based on sovereign immunity, and therefore DYS's motion to dismiss any ADEA claim asserted against it in Count Four of the Amended Complaint must be granted.

## A.   Whether Plaintiff Exhausted Her Administrative Remedies Under Title VII

As a prerequisite to filing a federal action, a plaintiff alleging employment discrimination under Title VII must (1) file timely charges of employment discrimination with the EEOC, and (2) receive and act upon the EEOC's statutory notice of the right to sue.  *See Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir.1989).  This exhaustion requirement is imposed because Congress gave the EEOC initial enforcement responsibility for Title VII challenges.  *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010).  The purpose of the requirement is "to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures to attempt to avoid litigation."  *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (quoting *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir.1998)).

An employee alleging a Title VII violation must exhaust her administrative remedies by filing an administrative charge with the EEOC.  *Younis*, 610 F.3d at 361 (citing 42 U.S.C. § 2000e-5(e)(1)).  The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  *Id.* (quoting 29 C.F.R. § 1601.12(b)).  Indeed, a Title VII plaintiff generally "cannot bring claims in a lawsuit that were not included in [her] EEOC charge."  *Id.* (citations omitted).  That is because allowing a Title VII action to encompass

claims outside the EEOC charges "would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role." *Id.*

Because it is usually aggrieved employees and not attorneys who file EEOC charges, *pro se* complaints are construed liberally. *Younis*, 610 F.3d at 362 (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)). Under the "expected scope of investigation test," the general rule is that "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002) (quoting *EEOC v. Bailey*, 563 F.2d 439, 446 (6th Cir. 1977)). Under this test, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Weigel*, 302 F.3d at 380 (quoting *Davis*, 157 F.3d at 463).

Defendants both seek dismissal of Counts One and Two because Ms. Clifford failed to exhaust her administrative remedies as to the Title VII discrimination claims. (ECF Doc. 17, pp. 8-10; ECF Doc. 19, pp. 5-7.) DYS also argues that Ms. Clifford failed to exhaust her administrative remedies as to her Title VII retaliation claim in Count Four. (ECF Doc. 19, p. 7.) These arguments will be addressed in turn.

### 1.    Plaintiff Failed to Exhaust Administrative Remedies for Title VII Discrimination Claims in Counts One and Two

In support of their arguments that Ms. Clifford failed to exhaust her administrative remedies as to her Title VII race and sex discrimination claims, Defendants note that she checked only the box labeled "retaliation" on the relevant EEOC charges, leaving blank the boxes alleging discrimination based on race and sex. (ECF Doc, 17, p. 9; ECF Doc. 19, p. 6; *see also* ECF Doc. 16-2, pp. 10-11; ECF Doc. 19-1, p. 1.) Defendants also note that the narrative sections

9

in both charges lack any explicit references to race or sex discrimination. (ECF Doc. 17, p. 9; ECF Doc. 19, p. 7.)

Specifically, the narrative for the 2022 OCSEA Charge asserts that Ms. Clifford "filed numerous grievances" with OCSEA, that OCSEA "failed to move [the] grievances over to arbitration," and that she was "retaliated against for engaging in protected activity." (ECF Doc. 16-2, p. 10.) Ms. Clifford argues that the EEOC would reasonably have been expected to investigate her race and sex discrimination claims based on this charge because "[i]t would be reasonable for the EEOC to review the claim of poor [union] representation and as such [she] would have informed the Commission that she believed that race, sex, and age were the grounds for the alleged discrimination and harassment." (ECF Doc. 25, p. 5.)

The narrative for the 2022 DYS Charge asserts that Ms. Clifford filed prior EEOC "Charge No. 22A-2021-01110" and "three grievances and an unfair labor practice complaint," that she was discharged in October 2021 for "insubordination, violation of work rules, and failure to follow work assignments/policies and procedures," and that she was "retaliated against for engaging in protected activity." (ECF Doc. 16-2, p. 11; ECF Doc. 19-1, p. 1.) Ms. Clifford argues an EEOC investigation into her race and sex discrimination claims would have been reasonably expected to grow out of this charge because she referred to an EEOC charge, three grievances, and an unfair labor practice charge, some of which asserted discrimination and disparate treatment, and "it would have been reasonable [for the EEOC] to investigate the claims of race and sex discrimination that Plaintiff had made against DYS." (ECF Doc. 24, pp. 5-6.)

Defendants argue that the expected scope of investigation for the EEOC charges filed against them would not include claims for race and sex discrimination. (ECF Doc. 17, pp. 9-10; ECF Doc. 19, pp. 6-7; ECF Doc. 26, pp. 6-7; ECF Doc. 27, pp. 2-3.) Under the "expected scope

10

of investigation test," an investigation may be reasonably expected to grow out of a charge of discrimination where the facts set forth in that charge "would prompt the EEOC to investigate a different, uncharged claim."  *Weigel*, 302 F.3d at 380 (quoting *Davis*, 157 F.3d at 463).

Where a plaintiff fails to check a box identifying a particular claim of discrimination, as in this case, "[t]he determinative inquiry . . . is whether [the plaintiff] alleged sufficient facts in [her] EEOC Complaint to put the EEOC on notice of [her] claim, despite that [s]he did not check the appropriate box on the EEOC's Complaint of Discrimination form."  *Dixon*, 392 F.3d at 217. When making this inquiry, "the facts alleged in the body of the EEOC charge, rather than merely the boxes that are marked on the charge, are the major determinants of the scope of the charge." *Bray v. Palm Beach Co.*, 907 F.2d 150 (6th Cir. 1990) (table) (per curiam).

In *Bray*, the Sixth Circuit considered an EEOC charge where the plaintiff had checked a box alleging "retaliation" but did not check a box alleging sex discrimination, with the only potential narrative reference to sex discrimination being a general allegation that the plaintiff suffered retaliation because he "filed a previous charge of discrimination against this company." *Bray*, 907 F.2d 150.  The court upheld dismissal of sex discrimination claims based on failure to exhaust because "[o]ne could not reasonably expect that such a minimal inquiry into a sex discrimination charge that was filed in 1974 would encompass an investigation of sex discrimination as a reason for [plaintiff]'s being denied a job in March, 1979." *Id.*

The situation is similar in this case.  While the relevant EEOC charges allege that Ms. Clifford suffered retaliation because she filed "numerous grievances" (ECF Doc. 16-2, p. 10) or because she filed a prior EEOC charge, "three grievances[,] and an unfair labor practice complaint" (ECF Doc. 16-2, p. 11; ECF Doc. 19-1, p. 1), the facts alleged do not reference or identify new instances of race or sex discrimination.  While the expected scope of an EEOC

11

investigation could include an inquiry into cited EEOC charges, grievances, or complaints for the purpose of determining the nature of protected activity that was subject to retaliation, Ms. Clifford has cited no authority for the proposition that a mere reference to a prior discrimination charge serves to incorporate the allegations from that charge into a new charge.  Indeed, such a finding would likely be contrary to caselaw indicating that the filing of a new EEOC charge cannot revive discrimination claims asserted in a prior EEOC charge.  *See, e.g., Adams v. Tenn. Dep't. of Fin. and Admin.*, 179 Fed.App'x. 266, 271 (6th Cir. 2006) (citing cases).

For the reasons stated, the Court concludes that the two EEOC charges did not contain allegations sufficient to give notice of the Title VII race and sex discrimination claims asserted in Counts One and Two of the Amended Complaint, and further that "the scope of the EEOC investigation reasonably expected to grow out of" those charges did not include Ms. Clifford's claims for race or sex discrimination.  *Weigel*, 302 F.3d at 380.  Because Ms. Clifford failed to exhaust the Title VII claims asserted in Counts One and Two, the motions of Defendants OCSEA and DYS to dismiss Counts One and Two are hereby **GRANTED**.[3]

### 2. Plaintiff Has Exhausted Her Administrative Remedies for the Title VII Retaliation Claim Against Defendant DYS in Count Four

In addition to Counts One and Two, DYS also argues that Ms. Clifford failed to exhaust her administrative remedies as to the Title VII retaliation claim asserted against DYS in Count Four.  (ECF Doc. 19, p. 7.)  In support, DYS highlights Ms. Clifford's specific assertion that she was "discriminated against in retaliation for engaging in protected activity, in violation of the Age Discrimination in Employment Act of 1967, as amended."  (*Id.* (quoting ECF Doc. 19-1, p. 1).)  Because she specifically alleged retaliation in violation of the ADEA, DYS argues that her

---

[3] Because the Court finds Ms. Clifford has failed to exhaust her Title VII discrimination claims against both defendants, it need not consider Defendants' additional arguments that certain alleged discriminatory acts relevant those claims are barred by the statute of limitations.  (ECF Doc. 17, pp. 12-13; ECF Doc. 19, pp. 7-8.)

charge explicitly excludes any claim for retaliation in violation of Title VII.  The Court finds this to be an overly strict reading of applicable legal standards.

The Court again notes that *pro se* EEOC complaints must be construed liberally.  *Younis*, 610 F.3d at 362.  Ms. Clifford prepared the 2022 DYS Charge without the assistance of an attorney.  (ECF Doc. 24, p. 9.)  Given that she prepared the charge without the assistance of counsel, the Court declines to find that her reference to retaliation in violation of the ADEA amounted to a declaration that she was not also alleging retaliation in violation of Title VII.

Indeed, such a finding would be at odds with the protected activities specifically identified in the 2022 DYS Charge.  In her charge, Ms. Clifford supports her checkbox allegation of retaliation with a narrative alleging that she (1) filed a specific EEOC charge in 2021, as well as other grievances and complaints, (2) was terminated from her job on October 21, 2021, and (3) was therefore discriminated against for engaging in protected activity.  (ECF Doc. 16-2, p. 11; ECF Doc. 19-1, p. 1.)  DYS's own records reflect that the 2021 EEOC Charge she identifies as protected activity for which she suffered retaliation complained of specific acts of discrimination based on race, sex, and age, in addition to retaliation.  (*See* ECF Doc. 26-1.)

Under Title VII, it is an "unlawful employment practice for an employer to discriminate against any of [its] employees . . . because . . . [s]he has made a charge, testified, assisted, or participated in any manner in an investigation proceeding, or hearing . . . ."  42 U.S. § 2000e-3(a).  Ms. Clifford explicitly alleged in the 2022 DYS Charge that she was terminated in retaliation for protected activity that included the filing of a prior EEOC charge.  Both DYS and the EEOC were certainly aware that the prior EEOC charge she referenced contained specific allegations of race and sex discrimination.  In these circumstances, the Court finds "the scope of

the EEOC investigation reasonably expected to grow out of the charge of discrimination" would include claims for retaliation in violation of Title VII. *Weigel*, 302 F.3d at 380.

The Sixth Circuit's decision in *Strickland v. City of Detroit*, 995 F.3d 495 (6th Cir. 2021) is also informative. In that case, the plaintiff asserted a claim for retaliation in violation of Title VII based on a complaint he filed with his Equal Employment Opportunity ("EEO") office, where he had checked a race discrimination box but did not mention race in the body of his complaint. *Strickland*, 995 F.3d at 510-11. The defendant argued he did not engage in activity protected by Title VII because the race discrimination checkbox was the only evidence that he had engaged in protected activity under Title VII. *Id.* at 511. The Sixth Circuit upheld the district court's conclusion that the checkbox was sufficient evidence that his EEO complaint amounted to protected activity. *Id.* The court distinguished its earlier decision in *Bray v. Palm Beach Co.*, where it held that a sex discrimination claim was not properly exhausted in an EEOC charge when "neither the box nor the body of the EEOC charge indicated that the plaintiff believed her mistreatment had been due to sex, rather than in retaliation for her previous discrimination complaints." *Strickland*, 995 F.3d at 511 (citing *Bray*, 907 F.2d 150, at *2).

Here, the text of Ms. Clifford's EEOC retaliation charge and the prior EEOC charge she identified as "protected activity" for which she was subject to retaliation gave both the EEOC and DYS sufficient notice of Ms. Clifford's retaliation claim under Title VII. The record further reflects that Ms. Clifford received notice of her right to sue under the 2022 DYS Charge on June 9, 2022 (ECF Doc. 16-2, p. 14) and timely filed her Title VII retaliation claim in this Court. Therefore, Ms. Clifford has exhausted her administrative remedies and may proceed with her

Title VII claim for retaliation.  DYS's motion to dismiss the Title VII retaliation claim in Count

Four of the Amended Complaint is therefore **DENIED**.[4]

## B.      Whether Plaintiff Has Stated Claims Against OCSEA in Counts Three and Four

Defendant OCSEA also moves to dismiss the claims asserted against it in Counts Three

and Four of the Amended Complaint, arguing Ms. Clifford has not pled sufficient facts to state a

plausible claim of age discrimination or retaliation against OCSEA, and arguing "[t]he majority

of the allegations Plaintiff makes against OCSEA in the Amended Complaint are conclusory

legal statements not entitled to deference by this Court."  (ECF Docs. 17, pp. 10-12; 27, pp. 4-5.)

Ms. Clifford argues that the allegations of the Amended Complaint are sufficient to state

plausible claims for relief against OCSEA in Counts Three and Four.  (ECF Doc. 25, p. 5.)

### 1.      Standard of Review

Under Rule 12(b)(6), the Court may dismiss a claim when a party fails to plead facts

upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  A pleading must contain "a short and plain statement of

the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

The plaintiff is not required to include "detailed factual allegations," but must provide

more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at

678 (citation omitted).  "Factual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.  While "[t]he plausibility standard is not akin to a

---

[4] Because the Court has concluded that Ms. Clifford's sole remaining cause of action is the Title VII retaliation claim arising from her October 21, 2021 termination, it need not address DYS's additional argument regarding statute of limitations bars that may be applicable to earlier claims.  (ECF Doc. 19, pp. 7-8; ECF Doc. 26, pp. 7-8.)

'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

This Court "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018) (citation omitted).  However, while "we must accept all well-pleaded factual allegations in the complaint as true, we need not 'accept as true a legal conclusion couched as a factual allegation.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Whittiker v. Deutsche Bank Nat. Tr. Co.*, 605 F. Supp. 2d 914, 924 (N.D. Ohio 2009).

"[A]lthough a court must generally accept all well-pled facts as true, if a document referenced in the complaint . . . contradicts the factual allegations in the complaint, the document 'trumps the allegations.'"  *Amir v. AmGuard Ins. Co.*, 606 F. Supp. 3d 653, 664 (E.D. Mich. 2022) (citing *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)).  "For a document to contradict the complaint, it must 'utterly discredit' the allegations."  *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020) (citing *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 755 (6th Cir. 2020), (quoting *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386–87 (6th Cir. 2017))).

16

2.   **Plaintiff Fails to State a Plausible Claim for Relief Against OCSEA in Counts Three and Four of the Amended Complaint**

In support of its motion to dismiss the age discrimination and retaliation claims asserted against it in Counts Three and Four of the Amended Complaint, OCSEA argues that Ms. Clifford has failed to plead facts sufficient to support a finding (1) that OCSEA breached its duty of fair representation, or (2) that OCSEA's actions were motivated by discriminatory animus.  (ECF Doc. 17, pp. 10-12.)  Ms. Clifford argues she has sufficiently pled both claims against OCSEA by alleging "disparate treatment in the failure to pursue corrective action," and a "refus[al] to timely process her grievances and pursue arbitrations because she complained of race, sex and age discrimination."  (ECF Doc. 25, p. 5.)

In claims for disability discrimination or retaliation where there is no direct evidence of discrimination or retaliation, "[c]ase law establishes that . . . a plaintiff may establish a prima facie case against his union by showing that '(1) the employer violated the collective bargaining agreement with respect to plaintiff; (2) the union permitted the violation to go unrepaired, thereby breaching the union's duty of fair representation; and (3) the union's actions were motivated by discriminatory animus.'"  *Snyder v. Sw. Airlines Co.*, No. 5:15-CV-1406, 2015 WL 5663800, at *3 (N.D. Ohio Sept. 24, 2015) (citation omitted); *see also Dille v. Laborers' Loc. 310*, No. 1:14 CV 1451, 2014 WL 6473606, at *2 (N.D. Ohio Nov. 18, 2014) ("When a Title VII violation is premised upon a union's failure to properly process an employee's grievance, the employee must demonstrate that the union violated its duty to the employee of fair representation and that the union was motivated by racial animus.")

Here, Ms. Clifford has alleged that she filed at least five grievances – presumably with OCSEA – alleging misconduct by her employer DYS.  (ECF Doc. 16-2, Am. Compl., ¶ 11.)  She also alleges that she filed an EEOC charge of retaliation against OCSEA in which she "alleged

that OCSEA failed to move her grievances to arbitration."  (*Id.* at ¶ 13.)  Consistent with these

allegations, she attached the June 8, 2022 EEOC charge she filed against OCSEA as an exhibit to

the Amended Complaint.  (ECF Doc. 16-2, p. 10.)  In that filing, she asserted:

> I have filed numerous grievances with the Respondent.  The Respondent has failed
> to move my grievances over to arbitration.
>
> I believe I was retaliated against for engaging in protected activity . . .

(*Id.*)  She additionally alleged that she filed a motion for reconsideration against OCSEA in

January 2022 where she reportedly alleged: (1) "she was receiving poor union representation by

allowing Defendant [DYS] to discriminate and harass her"; (2) "she was the only staff officer

treated differently"; and (3) "[t]he failure of representation was based upon [her] race and sex."

(ECF Doc. 16-2, Am. Compl., ¶ 15.)  Ms. Clifford also generally detailed her filing of various

charges, complaints, and motions for reconsideration relating to alleged discriminatory or

retaliatory actions committed by Defendant DYS.  (*Id.* at ¶¶ 9-16.)

In support of her ADEA claim against OCSEA, Ms. Clifford alleged that "OCSEA

engaged in disparate treatment, in part, by failing to pursue corrective action, including but not

limited to pursuing Plaintiff's grievances and/or arbitrations, because of her age."  (*Id.* at ¶ 32.)

She also made conclusory allegations as to the elements of the ADEA claim.  (*Id.* at ¶¶ 33-37.)

In support of her retaliation claims against OCSEA, Ms. Clifford alleged that OCSEA "took

retaliatory action against Plaintiff including, but not limited to refusing to timely process her

grievances and pursue arbitrations for filing complaints, grievances and motions for

reconsideration."  (*Id.* at ¶ 42.)  She also made conclusory allegations as to the elements of her

retaliation claims against OCSEA.  (*Id.* at ¶¶ 39-40, 43, 45, 47-49.)

Considering the allegations of the Amended Complaint as a whole, Ms. Clifford asserts

that OCSEA "failed to move her grievances to arbitration" (*id.* at ¶ 13) and provided "poor union

representation by allowing Defendant [DYS] to discriminate and harass her" (*id.* at ¶ 15).  She also alleges generally, and without factual specificity, that OCSEA "fail[ed] to pursue corrective action, including but not limited to pursuing Plaintiff's grievances and/or arbitrations" and "refus[ed] to timely process her grievances and pursue arbitrations."  (*Id.* at ¶¶ 32, 42.)

The Court finds that that the generalized contentions and legal conclusions set forth in the Amended Complaint are unsupported by factual allegations sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and therefore fail to state a claim for relief under the ADEA or Title VII.  There are no plausible factual allegations to support a finding that OCSEA breached its duty of fair representation, let alone that its actions were the result of a discriminatory animus against Ms. Clifford.  As to OCSEA's reported failure to arbitrate Ms. Clifford's grievances in particular, an "individual employee has no absolute right to have h[er] grievance arbitrated."  *Santos v. Am. Broad. Co.*, 866 F.2d 892, 894 (6th Cir. 1989) (quoting *Vaca v. Sipes*, 386 U.S. 171 (1967)).

This Court's findings are consistent with the holdings of other courts in this district.  *See, e.g., Dille*, 2014 WL 6473606, at *3 (dismissing Title VII claim against union premised on failure to properly process an employee's grievance, noting "[t]he plaintiff alleges no facts whatsoever in his complaint suggesting the union declined to pursue his grievance because of his race, color, religion, sex, or national origin"); *Snyder*, 2015 WL 5663800, at *3 (dismissing ADA and Ohio disability discrimination and retaliation claims against union based on representative's "refus[al] to sign [an] extension request as he was unfamiliar with the case," noting "the claims would fail for lack of any allegation of discriminatory animus on the part of [the union]").

For the reasons set forth above, the Court finds that Ms. Clifford has failed to plausibly state a claim against OCSEA for discrimination or retaliation under the ADEA, or for retaliation

under Title VII.  OCSEA's motion to dismiss the claims asserted against it in Counts Three and Four of the Amended Complaint is therefore **GRANTED**.

**C.     Whether ADEA Retaliation Claim against DYS is Barred by Sovereign Immunity**

Out of an abundance of caution, DYS moves to dismiss any ADEA retaliation claim that Ms. Clifford asserts against it in Count Four of the Amended Complaint.  (ECF Doc. 19, p. 9.) While Ms. Clifford has withdrawn her ADEA disparate treatment claim against DYS, "it is less clear if she is still seeking a claim of retaliation against [DYS] under the ADEA."  (*Id*.)  In her brief in opposition, Ms. Clifford states that she does not oppose the dismissal of any ADEA discrimination and retaliation claims against DYS.  (ECF Doc. 24, p. 7 n.1.)

"[I]n the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals."  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000).  Sovereign immunity applies to state agencies and instrumentalities, in addition to the states themselves.  *See Watson v. Ohio Dep't of Rehab. & Correction*, 167 F. Supp. 3d 912, 921 (S.D. Ohio 2016), *aff'd*, 690 F. App'x 885 (6th Cir. 2017).  Thus, sovereign immunity under the Eleventh Amendment precludes ADEA claims against a state agency that has not consented to the suit.  *See Latham v. Office of the Attorney General*, 395 F.3d 261, 270 (6th Cir. 2005).

For the reasons set forth above, DYS's motion to dismiss the any ADEA claim asserted against it in Count Four of the Amended Complaint based on sovereign immunity is **GRANTED**.

### III.     Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant OCSEA's Motion to Dismiss in its entirety and **GRANTS IN PART** and **DENIES IN PART** Defendant DYS's Motion to Dismiss.  Specifically, the Court **GRANTS** the motion to dismiss the Title VI discrimination

claims asserted against DYS in Counts One and Two of the Amended Complaint and the ADEA

retaliation claim asserted against DYS in Count Four of the Amended Complaint but **DENIES**

the motion to dismiss the Title VI retaliation claim asserted against DYS in Count Four of the

Amended Complaint.


Dated: October 11, 2023

        _/s/ Amanda M. Knapp_
        AMANDA M. KNAPP
        United States Magistrate Judge